IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  10-cv-01262-LTB

MAX MONTOYA,

        Plaintiff,
v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.
_____

ORDER
_____

        Plaintiff, Max Montoya, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and his application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c.  Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral arguments will not materially aid in the resolution of this appeal.  After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's final order.

## I.  STATEMENT OF THE CASE

        Plaintiff seeks judicial review of the SSA Commissioner's decision denying his July 2008 applications for disability insurance benefits and supplemental security income. [Administrative Record ("AR") 158, 162]  After an evidentiary hearing on June 23, 2009, an Administrative Law Judge ("ALJ") issued a written ruling on July 24, 2009, denying Plaintiff's applications on the basis that he was not disabled because his impairments and assessed residual functional capacity ("RFC") did not prevent him from performing work that he performed in the

past (Step Four). [AR 13]  The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination on April 7, 2010, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 3]  Plaintiff timely filed his complaint with this court seeking review of the Commissioner's decision.

## II.  FACTS

Plaintiff was born on November 10, 1949, and was 57 years old on his alleged onset date, and 59 years old on the date of the ALJ's decision. [AR 37, 38, 162, 170]  Plaintiff has a high school equivalent education, and has worked as a street sweeper operator. [AR 38, 214, 228, 481]  Plaintiff alleges that he became disabled on January 20, 2007, and was unable to work due to colon cancer, mental problems, bad knees and arm, high blood pressure, memory problems, asthma, attention deficit hyperactivity disorder (ADHD), and hepatitis C. [AR 213, 484]

The medical records related to Plaintiff's physical impairments reveal that in April 2007, Plaintiff underwent surgical repair of his colon; specifically, a sigmoid perforation with a diverting ileostomy. [AR 370]  Seven months later, in December 2007, he underwent a right colectomy and ostomy takedown. [AR 419-21]

On October 9, 2008, Plaintiff participated in a physical consultive examination with Alan Lichtenberg, M.D.  [AR 484-90]  Dr. Lichtenberg diagnosed Plaintiff with the following:  status post colon perforation with ostomy and re-attachment; right colectomy in December 2007 with no indication of cancer; mental and behavioral disorder with paranoia, depression and ADHD; Hepatitis C, inactive; history of ruptured left biceps, with good functional use; probable torn ACL in the right knee, with good functional use; high blood pressure, well-controlled; and mild allergies and asthma. [AR 488]  Dr. Lichtenberg concluded that Plaintiff's physical functioning

was "very good" and that he had "very minimal limitations." [AR 488]  However, he noted that Plaintiff may have some "major" psychiatric/psychological problems that would need to be evaluated. [AR 489]

The records related to Plaintiff's mental impairments begin with an examination by a state-agency psychologist, Brett Valette Ph.D., in September 2008. [AR 481-83]  Dr. Valette diagnosed Plaintiff with polysubstance dependence in full remission as reported by the patient, and nonspecific personality disorder with antisocial traits.  Dr. Valette assigned a Global Assessment Functioning (GAF) of 75. [AR 483]  He concluded that Plaintiff's trouble with general information and abstractions was due to his failure to finish school, but that his judgment and reasoning was adequate.  It was Dr. Valette's opinion that Plaintiff "probably struggles with some generalized anxiety disorder being out of prison and having to deal with people." [AR 483]

Also in September 2008, Ellen Ryan, M.D., a state-agency psychiatrist, reviewed the medical records and completed a Psychiatric Review Technique Form. [AR 347-60]  Dr. Ryan opined that Plaintiff had:  mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation. [AR 357]  As to Plaintiff's functional capacity, it was Dr. Ryan's assessment that he retained the mental ability to engage in work that was of limited significant complexity and that required up to three months to learn techniques, and that involved only limited interaction with co-workers or the public. [AR 343-46]

On February 2, 2009, Plaintiff began seeing Marilyn Smith, M.D., a psychiatrist at the Stout Street Clinic. [AR 539-43]  Dr. Smith's treatment notes indicate that at his initial visit she diagnosed Plaintiff with:  psychosis, not otherwise specified (NOS); and bipolar disorder with

3

psychosis vs. schizoaffective and panic disorder.  Dr. Smith assigned Plaintiff a GAF score of 40.  [AR 542]  She prescribed Depakote. [AR  543]  At a follow-up on April 28, 2009, Dr. Smith indicated Plaintiff was diagnosed with Psychosis NOS, and assessed his  mental status as: "alert OX3,  Pt. disorganized, friendship needed, lots of direction oral reassurances." [AR 537]  On May 4, 2009, Plaintiff reported that Depakote helped to alleviate his symptoms, but he was still paranoid. [AR 536] At that last visit, Dr. Smith assessed Plaintiff as "Alert. Disheveled. Speech rapid and pressured.  Loose. Anxious.  Distractable OS1/H1" and assigned him a GAF score of 35. [AR 536]

After his third visit, Dr. Smith completed a Mental Impairment Questionnaire, on May 11, 2009, rating Plaintiff's abilities in numerous areas of functioning. [AR 496]  Dr. Smith concluded that Plaintiff had "no useful ability to function" and was "unable to meet competitive standards" for several mental abilities, including his ability to:  remember work-like procedures; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; respond appropriately to changes in a routine work setting; deal with normal work stress; interact appropriately with the general public; and maintain socially appropriate behavior. [AR 498-99]  Dr. Smith indicated Plaintiff's impairments would cause him to be absent from work more than four days per month. [AR 500-01]

Dr. Smith also completed a Psychiatric Review Technique Form on May 11, 2009, in which she opined that Plaintiff had schizophrenic, paranoid and other psychotic disorders;

affective disorders; and anxiety-related disorders. [AR 502]  In rating Plaintiff's functional limitations, Dr. Smith opined that Plaintiff had marked restriction of activities of daily living, extreme difficulties in maintaining social functioning, extreme difficulties in maintaining concentration, persistence or pace, and four or more episodes of decompensation per month. [AR 512-15]

Robert Pelc, a clinical psychologist, reviewed the medical evidence and testified at the June 2009 hearing as an impartial medical expert. [AR 44, 133]  Dr. Pelc testified that the records indicated a generalized anxiety disorder, a personality disorder NOS with antisocial features, and a history of poly-substance addiction disorder. [AR 46]  Although he found references to other diagnoses of psychosis, Dr. Pelc could find no medical records to support those conditions. [AR 46]

Dr. Pelc further testified that it was his opinion that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no extended episodes of decompensation. [AR 47-50]  He also testified that there was no evidence in the record that would suggest the complete inability to function outside of the home environment. [AR 50]  Dr. Pelc testified that Plaintiff had mild limitations in the ability to understand, remember, and carry out simple instructions; moderate limitations in the ability to understand, remember, and carry out complex instructions; moderate limitations in the ability to make judgments on complex work-related decisions; moderate limitations in the ability to interact generally with the public, supervisors, and co-workers; and moderate limitations in the ability to respond appropriately to usual work settings and to changes in a routine work setting. [AR 50-51]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the

burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since January 20, 2007, the alleged onset date (Step One). [AR 18]  The ALJ next determined that Plaintiff had the following severe impairments: status post colonectomy and an anxiety disorder (Step Two). [AR 18]  The ALJ further determined, however, that such impairments or combination of impairments did not meet or medically equal a listed impairment – as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 – deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 20]

As a result, the ALJ went on to find that Plaintiff's exertional RFC limitations were that he could:  lift and carry bilaterally up to 50 pounds occasionally, 20 pounds frequently, and 10 pounds continuously; when lifting with the left upper extremity alone, lift 20 pounds occasionally and 10 pounds frequently; sit 4 hours at a time, 8 hours a day, with regular breaks occurring every 2 hours; stand 2 hours at a time, 6 hours a day; walk 2 hours at a time, 6 hours a day; occasionally climb ramps, stairs, ladders and scaffolding; frequently balance, stoop, kneel, crouch and crawl; occasionally reach overhead with the left upper extremity, frequently in all other directions; and no work at unprotected heights.  Plaintiff's mental RFC limitations were that he could:  understand, remember, and carry out instructions that can be learned within a period of 30 to 60 days; and only occasionally interact with co-workers, the public, and supervisors. [AR 23]

The ALJ then found that Plaintiff was capable of performing his past relevant work as a street sweeper/operator in that such work does not require the performance of work-related activities precluded by Plaintiff's RFC (Step Four). [AR 29]  As a result, the ALJ concluded that Plaintiff was not disabled at Step Four of the sequential process and, therefore, was not under disability as defined by the Social Security Act. [AR 30]

## V.  STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  Thus, the function of my review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI.  ISSUES ON APPEAL

Plaintiff raises various challenges to the ALJ's analysis and weight given to the medical opinion evidence related to his mental impairments and functioning.  His primary assertion is that the ALJ erred in rejecting the opinion of his treating psychiatrist, Dr. Marilyn Smith, and in relying on the opinion of Dr. Pelc, a non-examining consultant.

Generally, the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight. *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician opinion must be given controlling weight if it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and it is not inconsistent with other substantial evidence in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(d)(2) and § 416.927(d)(2).

If the opinion of a treating physician is not entitled to controlling weight, it still must be weighed using the appropriate factors. *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004). Those factors, set out in 20 C.F.R. § 404.1527(d)(2)(I-II) and § 416.927 , are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See also* Social Security Ruling (SSR) 96-2p.

The ALJ is required to give specific reasons for the weight he assigns to a treating physician opinion, and if he rejects the opinion completely, then he must give specific legitimate reasons for that rejection. *Langley v. Barnhart, supra,* 373 F.3d at 1119. When a treating physician's opinion is inconsistent with other medical evidence, it is the job of the ALJ to examine the other medical reports to see if they outweigh the treating physician's report, not the other way around. *Hamlin v. Barnhart, supra,* 365 F.3d at 1215 (quotation omitted).

In determining the severity of Plaintiff's mental impairment at Step Three of the sequential process, the ALJ adopted the opinion of Dr. Pelc. In so doing, the ALJ found that

> Dr. Pelc's testimony is substantiated by detailed reference to evidence in the treatment record and is consistent with the record as a whole. Dr. Pelc's opinion is supported by his knowledge and training as a clinical psychologist as well as his experience as an expert witness before the Social Security Administration and his knowledge of the disability program. Further, Dr. Pelc has the opportunity to review the entire medical evidence record as well as hear the claimants' testimony at hearing before offering his opinion. For these reasons, the [ALJ] assigns great weight to Dr. Pelc's opinions and assessment. [AR 22]

The ALJ acknowledged Dr. Smith's opinion that Plaintiff's mental impairments did meet a listed impairment – specifically Medical Listing 12.03, 12.04 and 12.06 – but the ALJ determined that "this opinion is specifically rejected as inconsistent with the medical evidence and the record as a whole." [AR 22]

Thereafter, in assessing Plaintiff's mental RFC, the ALJ analyzed Dr. Smith's opinions – as set forth in the Psychiatric Review Technique Form and Mental Impairment Questionnaire – as follows:

> The [ALJ] rejects the opinions and assessments made by Dr. Smith in the [forms] as being inconsistent with Dr. Smith's own treatment records and the record as a whole. For example, in the Mental Impairment Questionnaire Dr. Smith indicated that the claimant has a medically documented history of chronic organic mental, schizophrenic etc., or affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial supported and a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demand or change in the environment would be predicted to cause the individual to decompensate. Dr. Smith also indicated that the claimant has an anxiety related disorder and complete inability to function independently outside the area of his home. However, when presented with the same questions in the [Psychiatric Review Technique Form], Dr. Smith did not indicate that the claimant suffered from those conditions and/or symptoms.

Dr. Smith indicated that the claimant has had very minimal response to the prescribed medications. However, as previously indicated, that claimant told Dr. Smith that he was better organized, less angry and less hyper on his medications despite not taking them for a couple of weeks because they were stolen. It is also noted that Dr. Smith completed these forms after 3 visits with the claimant. Surely, that is not enough time to realize the therapeutic effect of the medications to determine whether or not they are effective, especially since the claimant indicated that he had not taken them consistently over the previous 2 weeks. Dr. Smith also indicated in the forms that the claimant experiences hallucinations or delusions. However, Dr. Smith's contemporaneous treatment notes show that the claimant specifically **denied** these symptoms. Dr. Smith indicated in the [Mental Impairment] Questionnaire that the claim had sleep disturbance but Dr. Smith's contemporaneous treatment notes show that the claimant **did not have any difficulty with sleep**. Although Dr. Smith indicated that the claimant has had 4 or more episodes of decompensation within a 12 month period, she only began treating him 3 months earlier and prior to that **the record is void of any evidence of mental health care, counseling, emergency room visits or hospitalizations in connection with his mental condition.** One can only wonder on what basis Dr. Smith based this opinion as it is not supported by the medical records. Dr. Smith also indicated that the claimant is afraid to leave his apartment but the claimant stated that **he leaves his apartment at least once a day. The [ALJ] also points out that the claimant leaves his apartment to work when there is work available.** [AR 27 – emphasis in original]

In addition, the ALJ relied on Dr. Pelc's testimony at the hearing that:

[H]e found no support in the medical records for the marked limitation contained in the forms completed by Dr. Smith. Dr. Pelc stated that a person with *a GAF score of 35 would generally have impairment in reality testing and communication. The person would be illogical, obscure, irrelevant and would be actively demonstrating significant thought disturbance that would lead to a variety of problems in terms of their ability to perform basic activities of daily living, interact adequately with others, maintain any scheduled activity. The individual would be seriously compromised.* Neither Dr. Pelc nor the [ALJ] finds that the evidence of record, including the claimant's presentation at hearing, supports a finding that the claimant is at that level of compromise. Dr. Pelc further stated that not only is there no support in the record for the opinions of Dr. Smith, . . . these opinions are in sharp contrast to the level of functioning described by the consultive examiners in their much more detailed reports. [AR 27-28 - emphasis in original]

11

The ALJ went on to conclude that "Dr. Smith's opinions regarding the claimant's ability to engage in work-related mental activities as well as the functional limitations caused by his impairments can be viewed as a clear attempt at assisting the claimant to obtain benefits through blatant misrepresentation of the facts. Such opinions should not only be disregarded it should probably be investigated." [AR 28]  Thus, in failing to adopt Dr. Smith's opinion and conclusions, the ALJ relied on Social Security Ruling 00-02p, which requires that evidence in a claim for benefits should be disregarded if there is reason to believe that fraud or similar fault was involved in providing that evidence.  The ALJ also ruled that ordinary credibility measures alone, as discussed, provided him with a sufficient basis to disregard the opinion evidence of Dr. Smith. [AR 29]

First, to the extent that Plaintiff argues on appeal that the ALJ erred in rejecting the medical opinion of Dr. Smith, as his treating psychiatrist, I disagree.  The ALJ's rulings related to his rejection of Dr. Smith's opinions are thorough, and are supported by the record.  It is clear that the ALJ applied the law by complying with 20 C.F.R. § 404.1527 and§ 416.927, and in applying the specific factors set forth in 20 C.F.R. § 404.1527(d) and § 416.927(d).  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)(ruling that the ALJ is required to "give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion").  The ALJ's order in this case was sufficient "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

Because the ALJ gave adequate specific and legitimate reasons for rejecting Dr. Smith's opinions, I find no error.  *See White v. Barnhart*, *supra*, 287 F.3d at 907-08 (Tenth Circuit would

not re-weigh evidence when the ALJ's discounting of treating physician's opinion was based on legitimate factors such as lack of objective medical evidence supporting treating physician's opinion, inconsistencies in the treating physician's records, and the relatively brief length of the doctor-patient relationship); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding no error where ALJ "provided good reasons in his decision for the weight he gave to the treating sources' opinions").

Plaintiff also asserts that the ALJ erred in that his determinations related to Plaintiff's metal impairments are not supported by substantial evidence. Specifically, he argues that Dr. Pelc's opinion was insufficient to formulate Plaintiff's mental RFC. Plaintiff asserts that Dr. Pelc did not examine him, and he did not review the medical treatment records from Dr. Smith. He also maintains that the only other evidence related to his mental impairments came from Dr. Valette, a state-agency psychologist, whom examined Plaintiff once and concluded only that Plaintiff "probably struggles with some generalized anxiety disorder being out of prison and having to deal with people" without providing an opinion as to his level of functioning. [AR 483] In addition, Dr. Ryan, a state-agency psychiatrist, opined – based on her review of the records – that Plaintiff had only mild or moderate restrictions, and that he retained the mental ability to engage in work that was of limited complexity, requiring up to 3 months to learn, and interaction with supervisors is OK, but less interaction with coworkers or public. [AR 345, 357]

While the evidence related to Plaintiff's mental impairments is limited, that is primarily because Plaintiff had not – except for three visits to Dr. Smith after he filed his applications – sought or received any treatment for his mental health issues. It is clear from the record, however, that Plaintiff's reported limitations were inconsistent with the evidence regarding his

13

functional abilities as stated by the ALJ.  I conclude that the medical evidence in the record is sufficient to support the ALJ's findings related to Plaintiff's mental impairments.  Much of the evidence in this case was in conflict.  The ALJ's order revels that he considered and analyzed the contrary evidence before reaching his decision, and I am unable to re-weigh that evidence and/or substitute my judgment for his.

Finally, I reject Plaintiff's argument that the ALJ erred in failing to re-contract the Plaintiff's treating medical providers for additional evidence under 20 C.F.R. § 404.1512(e) and § 416.912(e).  While it is the ALJ's duty to contact a treating psychologist or other medical source when the evidence received from them is inadequate, that is not the case here.  It is not the rejection of the treating physician's opinion that triggers the duty to re-contact the physician; rather it is the inadequacy of the evidence the ALJ receives from the treating physician that triggers the duty.  *White v. Barnhart, supra,* 287 F.3d at 908.  Nothing in the record here indicates that the evidence received was inadequate or incomplete; rather the ALJ found that the opinions of Dr. Smith were not supported by the medical record records, but instead were improperly grounded in her desire to help Plaintiff obtain benefits.  *Id.*

Accordingly, IT IS THEREFORE ORDERED that the Commissioner's decision is AFFIRMED.

Dated: April  13 , 2011 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE